IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MARY MINER,

                    Plaintiff,

vs.                                    Case No. 12-1440-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

                    Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On February 4, 2010, administrative law judge (ALJ) Michael A. Lehr issued the 1st ALJ decision, finding that plaintiff was not disabled (R. at 88-96). On February 8, 2011, the Appeals

Council issued a decision remanding the case back to an ALJ for further hearing (R. at 103-105).

On June 29, 2012, ALJ Michael R. Dayton issued a 2nd ALJ decision (R. at 10-22). Plaintiff alleges that she has been disabled since July 18, 2009 (R. at 10). Plaintiff is insured for disability insurance benefits through September 30, 2012 (R. at 13). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 13). At step two, the ALJ found that plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, status post fusion surgery; obesity; mild to moderate chronic obstructive pulmonary disease; history of goiter, status post thyroidectomy; tachycardia, status post ablation; and polysubstance abuse (R. at 13). At step three, the ALJ found that plaintiff's impairments, including substance use disorders, meet listed impairments 12.04, 12.06 and 12.09 (R. at 13).

In the absence of substance use, the remaining limitations would cause more than a minimal impact on plaintiff's ability to perform basic work activities; plaintiff would continue to have a severe impairment or combination of impairments. In the absence of substance abuse, plaintiff's mental impairments would not be severe, however, she would continue to experience significant functional limitations due to her physical

impairments (R. at 14).  At step three, the ALJ determined that,
if plaintiff stopped the substance use, she would not have an
impairment or combination of impairments that met or equaled a
listed impairment (R. at 16).  After determining plaintiff's RFC
(R. at 17), at step four, the ALJ found that plaintiff had no
past relevant work (R. at 20).  At step five, the ALJ determined
that plaintiff, if she stopped the substance use, could perform
a significant number of jobs in the national economy (R. at 20-
21).  The ALJ found that substance use disorder is a
contributing factor material to the determination of disability
because the plaintiff would not be disabled if she stopped the
substance use.  Because the substance use disorder is a
contributing factor material to the determination of disability,
plaintiff has not been disabled at any time from the amended
alleged onset date through the date of the decision (R. at 21).

**III.  Did substantial evidence support the finding of the ALJ
that, in the absence of substance abuse, plaintiff's mental
impairments are non-severe?**

In 1996, Congress passed Public Law 104-121.  It added the
following language to 42 U.S.C. § 423(d)(2):

> (C) An individual shall not be considered to
> be disabled for purposes of this title if
> alcoholism or drug addiction would (but for
> this subparagraph) be a contributing factor
> material to the Commissioner's determination
> that the individual is disabled.

20 C.F.R. § 404.1535 (disability insurance) and § 416.935 (SSI)
are identical, and are the implementing regulations governing
this issue.  The implementing regulations make clear that a
finding of disability is a condition precedent to an application
of §423(d)(2)(C).  The Commissioner must first make a
determination that the claimant is disabled.  He must then make
a determination whether the claimant would still be found
disabled if he or she stopped abusing alcohol or drugs.  If so,
then the alcohol or drug use is not a contributing factor
material to the finding of disability.  If however, the
claimant's remaining impairments would not be disabling without
the alcohol or drug abuse, then the alcohol or drug abuse is a
contributing factor material to the finding of disability.  The
ALJ cannot begin to apply §423(d)(2)(C) properly when he has not
yet made a finding of disability.  Drapeau v. Massanari, 255
F.3d 1211, 1214-1215 (10th Cir. 2001).  In other words, an ALJ
must first conduct the five-step inquiry without separating out
the impact of alcoholism or drug addiction.  If the ALJ finds
that the claimant is not disabled under the five-step inquiry,
then the claimant is not entitled to benefits and there is no
need to proceed with the analysis under §§ 404.1535 or 416.935.
If the ALJ finds that the claimant is disabled and there is
medical evidence of his or her drug addiction or alcoholism,
then the ALJ should proceed under §§ 404.1535 or 416.935 to

determine if the claimant would still be found disabled if he or she stopped using alcohol or drugs. Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001).

The ALJ found that substance abuse is a contributing factor material to the determination of disability because plaintiff would not be disabled if she stopped the substance use (R. at 21). In making that determination, the ALJ found that in the absence of substance abuse, plaintiff's mental impairments are non-severe (R. at 14-15). Plaintiff argues that substantial evidence does not support the ALJ's determination that plaintiff's mental impairments are non-severe in the absence of substance abuse (Doc. 10 at 11-15).

On May 19, 2009, Dr. Schulman prepared a psychiatric review technique form. He found that, when considering plaintiff's substance addiction disorder, that she met listed impairment 12.09 (substance addiction disorders). Dr. Schulman, after reviewing the case record, including treatment notes, stated the following:

> Treatment notes clearly indicate that alcohol is the primary and controlling issue for her. Were it not for alcohol claimant would be functional…
>
> If it were not for substance abuse/dependency claimant would be functional on a daily basis and able to manage ordinary vocational activity.

(R. at 551).  The ALJ accorded substantial weight to the
opinions of Dr. Schulman (R. at 14).

Dr. Schell saw plaintiff on two occasions, on October 24,
2009 and on November 5, 2009 (R. at 601-610).  On November 5,
2009, Dr. Schell prepared a medical source statement-mental, in
which he opined that plaintiff was markedly limited in 14 out of
20 categories.  The form indicated that the statement sets forth
the limitations remaining if the claimant stopped doing drugs
and/or alcohol (R. at 597-599).

The ALJ stated the following regarding the opinions of Dr.
Schell:

> Dr. Schell's opinion is not only based upon
> an extremely limited, short-term, treatment
> relationship, but is also inconsistent with
> the claimant's other, long-term, mental
> health treatment records which show little
> impairment when the claimant is not
> drinking.  They are also inconsistent with
> the claimant's own reports regarding her
> recent mental functioning.  Finally, Dr.
> Schell's records indicate that he was
> unaware of the fact that the claimant was
> abusing alcohol and other substances during
> this period, as Dr. Schell's diagnostic
> assessment did not list a substance abuse
> disorder (Exhibit 22F).  If, as seems
> likely, Dr. Schell was unaware that the
> claimant was engaged in substance abuse,
> this fact alone could seriously distort Dr.
> Schell's assessment of the claimant's health
> status.  Accordingly, this opinion has been
> given little weight in assessing the
> severity of the claimant's mental health
> impairments in the absence of substance
> abuse.

(R. at 16).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).

The court finds that the ALJ gave valid reasons for giving little weight to the opinions of Dr. Schell.  The court gave greater weight to the opinions of Dr. Schulman, who had reviewed information in the record, including treatment notes, on or before May 19, 2009.  The ALJ also gave weight to recent treatment notes (R. at 640-641), and to other treatment notes (R. at 534-535) and plaintiff's own statements (Exhibit 9E) in finding that plaintiff's mental impairments were not severe absent alcohol (R. at 15).  The court finds that the conclusions of the ALJ are reasonable; there is sufficient evidence to support the ALJ's conclusions.  The court finds no clear error in the ALJ's analysis, and the court will not reweigh the evidence.

**IV. Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart,

64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ found that plaintiff could perform light work in that she could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours out of an 8-hour workday, and sit for 6 hours out of an 8-hour workday, with normal breaks. Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to hot and cold temperature extremes, vibration, fumes, odors, gases, poor ventilation, and other pulmonary irritants (R. at 17).

In making his RFC findings, the ALJ accorded "substantial" weight to the opinions of Dr. Siemsen, who affirmed a physical RFC assessment on July 7, 2009 (R. at 20, 507-514, 568). The assessment summarized the medical evidence in the record, and

discussed plaintiff's credibility in light of the medical evidence (R. at 514).

The ALJ also considered the reports of two consultative examinations, one by Dr. Morrow on February 13, 2009 (R. at 501-504), and one by Dr. Lewis on June 20, 2009 (R. at 556-560) (R. at 19). The ALJ determined that Dr. Siemsen's opinions were well supported by the evidence, and were consistent with the examination findings of Dr. Morrow and Dr. Lewis (R. at 20). Furthermore, there is no medical opinion evidence that disputes the RFC opinions set forth in the assessment by Dr. Siemsen.

The assessment by Dr. Siemsen is accompanied by a written summary of the medical evidence, a brief mention of her daily activities, and an evaluation of plaintiff's credibility in light of the medical evidence (R. at 514). Furthermore, the ALJ determined that the findings of Dr. Siemsen are consistent with the examination findings of Dr. Morrow and Dr. Lewis. The physicians found that plaintiff had normal, coordinated and symmetrical gross motor function. Both noted no asymmetrical reflex, sensory, or motor deficits. Both noted no need for an assistive device. Dr. Morrow found that plaintiff had no difficulty getting on and off the examining table, with heel and toe walking, and in squatting and arising from the sitting position; Dr. Lewis found that plaintiff only had mild difficulties with these maneuvers. Dr. Lewis found that

plaintiff had a limited range of motion of the lumbar spine (R. at 501-504, 556-559). Both consultative examinations were a part of the file that was reviewed by Dr. Siemsen when he affirmed the RFC assessment.

The court finds that the ALJ's RFC findings are reasonable; there is sufficient evidence to support the ALJ's RFC findings. The court finds no clear error in the ALJ's analysis, and the court will not reweigh the evidence.

**V. Did the ALJ err by not ordering a consultative examination to further assess plaintiff's physical and/or mental limitations?**

Consultative medical examinations may be ordered by the ALJ when the information needed is not readily available from medical treatment sources. 20 C.F.R. §§ 404.1512(e), 404.1519a. The Commissioner has broad latitude in ordering consultative examinations. Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim. Similarly, where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary. There must be present some objective evidence in the record suggesting the existence of a condition which could have a material impact

14

on the disability decision requiring further investigation.  The

claimant has the burden to make sure there is, in the record,

evidence sufficient to suggest a reasonable possibility that a

severe impairment exists.  When the claimant has satisfied this

burden in that regard, it then becomes the responsibility of the

ALJ to order a consultative examination if such an examination

is necessary or helpful to resolve the issue of impairment.  In

a counseled case, the ALJ may ordinarily require counsel to

identify the issue or issues requiring further development.  In

the absence of such a request by counsel, the court will not

impose a duty on the ALJ to order a consultative examination

unless the need for one is clearly established in the record.

The ALJ should order a consultative exam when evidence in the

record establishes the reasonable possibility of the existence

of a disability and the result of the consultative exam could

reasonably be expected to be of material assistance in resolving

the issue of disability.  Hawkins v. Chater, 113 F.3d 1162,

1166-1168, 1169 (10th Cir. 1997; see Madrid v. Barnhart, 447

F.3d 788, 791-792 (10th Cir. 2006)(where additional tests are

required to explain a diagnosis already in the record, resort to

a consultative examination may be necessary).

     As noted above, the Commissioner has broad latitude in

ordering a consultative examination.  The record contains

plaintiff's treatment notes, mental assessments by Dr. Schulman

and Dr. Schell, two physical consultative examinations by Dr.
Morrow and Dr. Lewis, and a physical RFC assessment by Dr.
Siemsen which contains a summary of medical and other evidence.
There is no indication that these assessments or examinations
were stale because of material changes in the medical evidence
which developed after these assessments or opinions were
rendered. See Chapo v. Astrue, 682 F.3d 1285, 1292 (10th Cir.
2012). On these facts, the court finds that there was no clear
error by the ALJ when he did not order further consultative
examination(s) of the plaintiff.

IT IS THEREFORE ORDERED that the judgment of the
Commissioner is affirmed pursuant to sentence four of 42 U.S.C.
§ 405(g).

Dated this 11th day of February 2014, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge